**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DONALD WRIGHT SIGMUND**          *

      Plaintiff          *

v.          *          Case No.: 1:05CV01366
                                          Judge: Ellen S. Huvelle

**CASSIDY & PINKARD, INC., et al.**          *

      Defendants          *

**DEFENDANTS, STANDARD PARKING CORPORATION'S, STANDARD PARKING CORPORATION IL'S, STANDARD PARKING L.P.'S AND APCOA, INC.'S, MOTION FOR SUMMARY JUDGMENT**
————————————

**COME NOW**, the Defendants, **STANDARD PARKING CORPORATION, STANDARD PARKING CORPORATION IL, STANDARD PARKING L.P. and APCOA, INC.** (hereinafter collectively referred to as "APCOA/Standard Parking"), by and through their attorneys, **JEFFREY R. SCHMIELER and SAUNDERS & SCHMIELER, P.C.**, pursuant to Rule 56, LCvR 7(h), file this Motion for Summary Judgment and in support thereof, state as follows:

I.          **INTRODUCTION**

According to the Complaint, on or about the evening of July 10, 2002, Prescott Sigmund planted explosives in a vehicle owned by his father, Donald Sigmund, which was parked in a parking garage located at 5225 Wisconsin Avenue, N.W., Washington, D.C., with the intention of killing his father.  On or about July 12, 2002, the Plaintiff entered his father's vehicle at which time the explosives planted by Prescott Sigmund detonated.

The Plaintiff has sued these Defendants alleging Negligence (Count I), Negligent Infliction of Emotional Distress (Count II), and Gross Negligence (Count III).  The Plaintiff

has alleged that these Defendants were responsible for the management and security of the subject parking garage.

For the reasons set forth below, there are no material facts in dispute and these Defendants are entitled to Judgment as a matter of law.

## II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.    On November 11, 2004, the Rule 30 (b)(6) corporate designee for Standard Parking, Mr. Derege Tadesse, was deposed by the current Plaintiff's counsel.

2.    The building where the subject parking garage is located is owned by Starwood Urban Retail, VI, LLC (hereinafter "Starwood").

3.    The building where the subject parking garage is located is managed by Defendant Cassidy & Pinkard.

4.    During the November 11, 2004 deposition of Mr. Tadesse, the Parking Services Agreement between Starwood and APCOA/Standard Parking, Inc. was reviewed.    A copy of that Parking Services Agreement is attached hereto and incorporated by reference as **Exhibit 1**.

5.    The Parking Services Agreement states at paragraph 6(F):

Contractor shall not modify the traffic control, safety or security systems in the Garage without Owner's prior written consent, which consent shall not be unreasonably withheld provided that such proposed modifications do not: (i) conflict with any other agreement to which Owner may be a party in any way related to or affecting the Garage or the parking available therein, (ii) adversely impact upon the number and size of the parking spaces available in the Garage, (iii) adversely impact upon the access to the Garage, or (iv) adversely impact upon the safety of patrons of the Building and/or the Garage and/or the security of the vehicles or other personal property therein.

2

6.    Standard Parking is in the parking business, not the security business.  <u>See</u> Depo. Tr. Tadesse at 15:18-21; 35:8-14; 55:11-56:2.  A copy of Mr. Tadesse's deposition transcript is incorporated by reference and is attached hereto as **Exhibit 2**.

7.    These Defendants are not responsible for security; security is the responsibility of the building owner and the property manager.  <u>See</u> Depo. Tr. Tadesse at 16:5-14; 16:17-17:13; 55:11-56:2.

8.    Effective June 2, 2001, a restaurant called Bambule, which is located in the building, was responsible for providing parking services in the garage after-hours and on the weekend.  <u>See</u> Depo. Tr. Tadesse at 63:12-21; 64:7-8.

9.    The Plaintiff alleges that his step-brother, Prescott Sigmund, planted the explosives in his father's car on or about the evening of July 10, 2002. <u>See</u> Complaint, ¶17; ¶¶22-23.


**III.    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.    Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P 56(c).  There is "no genuine issue for trial" where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  <u>See</u> <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

3

However, in considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party.

One of the principal purposes of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1985). Rule 56 is to be construed with due regard not only for the rights of persons asserting claims, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no basis. Id. at 327.

Once a party makes a properly supported Motion for Summary Judgment, the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue of fact for trial. To meet this burden, the non-moving party must produce competent evidence on each element of his or her claim. Id. at 324. Such evidence cannot rest on mere speculation, or building one inference upon another. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The law is equally well settled that in the event the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party' s case summary judgment is mandated.

**B.     Argument**

       1.     **The Undisputed Facts in this Case Demonstrate that these Defendants Owed No Duty to Plaintiff**

Under District of Columbia law, to establish a claim for negligence, the plaintiff must show:

    (1)     A duty, owed by the defendant to the plaintiff, to conform to a certain

standard of care;

(2)    A breach of this duty by the defendant; and

(3)    An injury to the plaintiff proximately caused by the defendant's breach.

Romero v. National Rifle Association of America, Inc., 749 F.2d 77, 79 (D.C. Cir. 1984) citing O'Neil v. Bergan, 452 A.2d 337 (D.C. App. 1982).  The District of Columbia Court of Appeals has defined proximate cause as, "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." McKethean v. Washington Metropolitan Area Transit Authority, 558 A.2d 708, 716 (D.C. App. 1991).

The District of Columbia Court of Appeals in McKethean went on to discuss how proximate cause should be analyzed in a case in which a criminal act is alleged to have occurred between the alleged negligent act and the injury.  In that case, the Court analyzed the potential liability of the District of Columbia in maintaining a defective median in the roadway, when an accident was caused by an intoxicated driver who lost control of the vehicle after striking the median.  The court noted that, "an intervening negligent or criminal act breaks the chain of causation if it is not reasonably foreseeable." McKethean, 588 A.2d at 716.  The court noted that, "there is no proximate causation when the sequence of events leading to an injury is 'highly extraordinary in retrospect.'" Id. at 718 citing Lacy v. District of Columbia, 424 A.2d 317, 321 (D.C. App. 1980).

The Court of Appeals in McKethean went on to say:

When an intervening act is criminal, this court demands a more heightened showing of foreseeability than if it were merely negligent.  Because of the "extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown."  (Citing Lacy, supra). The defendant will be liable only if the criminal act is so foreseeable that a

5

duty arises to guard against it.

McKethean, 588 A.2d at 716-17.

This means that the plaintiff must show that the defendant has an increased awareness, "of the danager of a particular criminal act." Id. at 717.  Thus, in Lacy, supra, the court noted that the District of Columbia law requires foreseeability of a specific type of harm:

> Thus, although normally the 'defendant need not have foreseen the precise injury, nor should he have had notice of the particular method in which a harm could occur,' in order to establish proximate cause . . . unless the assault was foreseeable, the defendants in this case had no duty to act.

Lacy, 424 A.2d at 323 (internal citation omitted).  The court in Lacy noted in Cook v. Safeway Stores, Inc., 354 A.2d 507 (D.C. App. 1976), and in Graham v. Safeway Stores, Inc., 316 A.2d 852 (D.C. App. 1974), that there was no duty to foresee and guard against a purse snatcher or the act of intentionally pushing a child against a broken store window. These principles have been applied by the District of Columbia Court of Appeals in cases such as St. Paul Fire and Marine Insurance Co. v. James G. Davis Construction Corp., 350 A.2d 751 (D.C. App. 1976).  In that case, where debris was thrown by the defendant into an alley, which led to a fire set by an unknown person, the court held that as a matter of law, the causal connection between the fire and the alleged negligence in allowing debris to accumulate in the alley had been severed.

Likewise, in Union Storage Co. v. McIntyre, 256 A.2d 787 (D.C. App. 1969), the court held as a matter of law that a warehouseman was not liable for the actions of a deranged police officer in removing a protective wire mesh screen allegedly improperly installed in the window of a building and setting a fire within the warehouse.  Quoting the

Massachusetts court in <u>Bellows v. Worcester Storage Co.</u>, 297 Mass. 188, 7 N.E.2d 588

(1937), the court said:

> The causal connection between the original wrong of the defendant . . . and
> the ultimate harm . . . has been broken and . . . something so distinct . . .
> has happened as to constitute an intervening efficient, independent and
> dominant cause . . .  In the present case, the only normal or foreseeable
> result of negligence in failing to repair the door was that some person might
> enter and steal.  What actually happened was harm of a wholly different
> kind, extraordinary, abnormal, irrational, and impossible to foresee.  It
> cannot be attributed to any fault of the defendant.

<u>Union Storage Co.</u>, 256 A.2d at 789-90.

The District of Columbia Circuit Court of Appeals interpreted <u>Lacy</u>, <u>supra</u>, and <u>St.

Paul Marine and Insurance Co.</u>, <u>supra</u>, in <u>Romero</u>, <u>supra</u>.  In <u>Romero</u>, the widow of a

robbery victim filed suit against an organization which maintained the office from which

the gun was taken during a burglary.  The court noted that the question is not simply

whether a criminal event is foreseeable, but whether a duty exists to take measures to

guard against it, which is ultimately a question of fairness for the court. <u>Romero</u>, 749 F.2d

at 79 <u>citing</u> <u>Cook</u>, 354 A.2d at 509-10.  The court affirmed the trial court's action in

ultimately ruling as a matter of law that the defendant was not liable to the plaintiff.

Judge Revercomb of this Court also addressed this body of law in <u>Bell v. Colonial

Parking, Inc.</u>, 807 F. Supp. 796 (1992).  In that case, the court was faced with a plaintiff

who was riding in a vehicle that he did not know had been stolen from a parking garage,

and who then attempted to sue the parking garage for negligence in allowing the vehicle's

theft.  The court noted that the District of Columbia Court of Appeals had adopted a

restrictive view of liability for the criminal acts of an intermeddling third-party. <u>Bell</u>, 807 F.

Supp. at 797 <u>citing</u> <u>Lacy</u>, 424 A.2d at 323.  In the absence of any incidents that would

make the subject occurrence foreseeable, the trial court held that there simply were not facts to meet the more heightened showing of foreseeability required by District of Columbia cases such as McKethean, supra. Bell, 807 F. Supp. at 798. A Motion for Summary Judgment was therefore granted on behalf of the parking lot owner.

Defendant APCOA/Standard Parking is not the owner, manager, or landlord of the subject premises. APCOA/Standard Parking simply provides parking services and is not responsible for any security services whatsoever. See Depo. Tr. Tadesse at 15:18-21; 35:8-14; 55:11-56:2. APCOA/Standard Parking's employees are mainly parking attendants, with responsibilities that include issuing parking tickets to daily parkers, collecting fees, and signing up monthly parkers. APCOA/Standard Parking only provides parking services during normal business hours Monday through Friday and another company, Bambule Restaurant, is responsible for parking services after-hours and on the weekends. See Depo. Tr. Tadesse at 63:12-21; 64:7-8. Further, the Parking Services Agreement between APCOA/Standard Parking and Starwood, the owner of the subject premises, specifically states that APCOA/Standard Parking has no authority over or responsibility for any security arrangements at the garage in question. See Depo. Tr. Tadesse at 26:5-12; **Exhibit 1**, ¶6(f).

Thus, APCOA/Standard Parking is not an owner of a building or a manager who had any responsibility for overall security of a parking garage. See Doe v. Georgetown Center, 708 A.2d 255 (D.C. App. 1998). Nor does a special relationship exist between APCOA/Standard Parking and the Plaintiff, such as that between a common carrier and passengers who have some obligation to protect passengers from assault during their journey. See Washington Metropolitan Transit Authority v. O'Neill, 633 A.2d 834 (D.C.

8

App. 1994). Further, the situation invovling APCOA/Standard Parking and the Plaintiff is not analagous to a school that may have had notice of assaults in the immediate vicinity of the subject occurrence, so as to have a duty to prevent crimes against the students. District of Columbia v. Doe, 524 A.2d 30 (D.C. App. 1987).

In the instant case, no reasonable jury could conclude that any of the defendants should have foreseen the likelihood that an intruder, who was the step-brother of the Plaintiff, would enter the garage and place pipe bombs in their father's vehicle parked therein after hours. Certainly, a company whose sole responsibility is to provide parking services cannot be deemed to have a duty to the Plaintiff to foresee and/or protect the Plaintiff from such an extraordinary event. See generally, Romero, supra; Lacy, supra; Cook, supra; Graham, supra; Doe v. Georgetown, supra; Washington Metropolitan Transit Authority v. O'Neil, supra; District of Columbia v. Doe, supra.

### 2. Plaintiff Knew Prior to Instituting Suit Against APCOA/Standard Parking that APCOA/Standard Parking had no Pre-Existing Duty to Provide Security to the Subject Premises

On or about July 11, 2003 Plaintiff filed a Complaint in this court, naming Prescott W. Signmund and Starwood Urban Investment, LLC as Defendants. See Civil Action Number 03-1507 (ESH), Sigmund v. Starwood Urban Investment, et. al. On November 11, 2004, Plaintiff's current counsel deposed the Rule 30 (b)(6) corporate designee for APCOA/Standard Parking, Mr. Derege Tadesse. At the deposition of Mr. Tadesse the Parking Services Agreement between Starwood, the owner of the parking garage, and APCOA/Standard Parking was reviewed. See Depo. Tr. Tadesse at 26:5-12; **Exhibit 1**, ¶6(f).

9

The Parking Services Agreement specifies that APCOA/Standard Parking has no obligations, requirements, or is in any way otherwise responsible for providing security services at the parking garage in question. <u>See</u> **Exhibit 1**, ¶6(f).  Furthermore, Mr. Tadesse testified that APCOA/Standard Parking is only responsible for providing parking services to the parking garage and was in no way responsible for providing security services. <u>See</u> Depo. Tr. Tadesse at 15:18-21; 35:8-14; 55:11-56:2.  Mr. Tadesse further testified that the issue of security is the responsibility of the building owner and the property manager. <u>See</u> Depo. Tr. Tadesse at 16:5-14; 16:17-17:13; 55:11-56:2.  In sum, APCOA/Standard Parking has no contractual responsibility to provide security services to the parking garage.

Since the November 11, 2004 deposition of Mr. Tadesse, Plaintiff has had in his possession a copy of the contract between APCOA/Standard Parking as well as a copy of Mr. Tadesse's deposition transcript.  And despite knowing full well that APCOA/Standard Parking was in no way responsible for security measures at the parking garage, Plaintiff filed the Complaint in the underlying action on July 8, 2005, naming APCOA/Standard Parking as a defendant. Because APCOA/Standard Parking is under no contractual or any other legal obligation to provide security services and that those services are the exclusive responsibility of the owner and manager of the parking garage, no jury could possibly find that APCOA/Standard Parking is liable for the alleged incident.

/ / /

/ / /

/ / /

/ / /

**WHEREFORE**, for the foregoing reasons, the named Defendants, **STANDARD PARKING CORPORATION, STANDARD PARKING CORPORATION IL, STANDARD PARKING L.P. and APCOA, INC.**, respectfully request that this Honorable Court enter Summary Judgment in its favor.

Respectfully submitted,

/s/ Samuel N. Shapiro
**JEFFREY R. SCHMIELER (# 035964)**
**SAMUEL N. SHAPIRO (# 471911)**
**SAUNDERS & SCHMIELER, P.C.**
8737 Colesville Road, Suite L-200
Silver Spring, Maryland 20910
(301) 588-7717

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DONALD WRIGHT SIGMUND**                    *

      Plaintiff                               *

v.                                          *        Case No.: 1:05CV01366
                                                     Judge: Ellen S. Huvelle
**CASSIDY & PINKARD, INC., et al.**          *

      Defendants                              *

<u>**REQUEST FOR HEARING**</u>

    The Defendants, **STANDARD PARKING CORPORATION, STANDARD PARKING**

**CORPORATION IL, STANDARD PARKING L.P. and APCOA, INC.**, respectfully request

a Hearing on their Motion for Summary Judgment.


                                     Respectfully submitted,


                                     <u>/s/ Samuel N. Shapiro</u>
                                     **JEFFREY R. SCHMIELER (# 035964)**
                                     **SAMUEL N. SHAPIRO (# 471911)**
                                     **SAUNDERS & SCHMIELER, P.C.**
                                     8737 Colesville Road, Suite L-200
                                     Silver Spring, Maryland 20910
                                     (301) 588-7717

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DONALD WRIGHT SIGMUND**                    *

      Plaintiff                    *

v.                                    *          Case No.: 1:05CV01366
                                              Judge: Ellen S. Huvelle

**CASSIDY & PINKARD, INC., et al.**          *

      Defendants                    *

<u>**ORDER**</u>

     **UPON CONSIDERATION OF** the Motion for Summary Judgment filed by

Defendants, Standard Parking Corporation, Standard Parking Corporation IL, Standard

Parking L.P. and APCOA, Inc., good cause having been shown, it is this _____

day of _____, 2005

     **ORDERED**, that the aforementioned Motion for Summary Judgment be and is

hereby granted; and it is further

     **ORDERED**, that Judgment is entered in favor of Defendants, Standard Parking

Corporation, Standard Parking Corporation IL, Standard Parking L.P. and APCOA, Inc.

and against Plaintiff Donald Wright Sigmund.


_____
**THE HONORABLE ELLEN S. HUVELLE**

Copies to:

Jeffrey R. Schmieler, Esquire
Samuel N. Shapiro, Esquire
**Saunders & Schmieler, P.C.**
8737 Colesville Road, Suite L-201
Silver Spring, Maryland 20910
**Attorneys for Standard Parking Corp.,**
**Standard Parking Corporation IL,**
**Standard Parking L.P., and Apcoa, Inc.**

Athanosios Basdekis, Esquire
Paul Cornoni, Esquire
Patrick M. Regan, Esq.
**Regan, Halperin & Long, PLLC**
1919 M. Street, NW
Suite 350
Washington, DC 20036
***Attorney for Plaintiff***

Steven Roy Migdal, I., Esquire
**Buck, Migdal & Myers, Chartered**
P.O. Box 2400
23 West Street
Annapolis, MD 21404
**Counsel for Cassidy & Pinkard, Inc.**, et al.

**Thomas Patrick Ryan, Esquire**
McCarthy Wilson
100 South Washington Street
Rockville, MD 20850
**Counsel for AGW & Associates, Inc.**

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a copy of foregoing Motion for Summary Judgment,

Request for Hearing and proposed Order which was electronically filed in this case with

the United States District Court for the District of Columbia, was mailed first class,

postage paid this **13th** day of **September, 2005** to the following:


Athanosios Basdekis, Esquire
Paul Cornoni, Esquire
Patrick M. Regan, Esq.
**Regan, Halperin & Long, PLLC**
1919 M. Street, NW
Suite 350
Washington, DC 20036
***Attorney for Plaintiff***

Steven Roy Migdal, I., Esquire
**Buck, Migdal & Myers, Chartered**
P.O. Box 2400
23 West Street
Annapolis, MD 21404
**Counsel for Cassidy & Pinkard, Inc.**, et al.

**Thomas Patrick Ryan, Esquire**
McCarthy Wilson
100 South Washington Street
Rockville, MD 20850
**Counsel for AGW & Associates, Inc.**


                    /s/ Samuel N. Shapiro
                    Samuel N. Shapiro (# 471911)