Loc #03714

# PARKING SERVICES AGREEMENT

This Parking Services Agreement ("**Agreement**") is effective as of the ___ day of _____, 2001, by and between **STARWOOD URBAN RETAIL V, LLC** ("**Owner**"), and APCOA/Standard Parking, Inc., a Delaware corporation ("**Contractor**").

**WHEREAS,** Owner owns the leasehold interest in certain improved real property located at 5225 Wisconsin Avenue, Washington, DC , (the "**Property**"), which Property contains a building (the "**Building**") and a one level parking garage and rear upper deck (the "**Garage**"); and

**WHEREAS,** Contractor is a commercial parking lot and garage operator; and

**WHEREAS,** Owner and Contractor have mutually agreed upon terms and conditions whereby Contractor will operate a commercial parking facility in a portion of the Garage.

**NOW THEREFORE,** in consideration of the mutual covenants and obligations hereinafter set forth, the parties hereto agree as follows:

## WITNESSETH:

1. **Description of Garage and Contractor's Services.**

   A. The parties hereby agree and acknowledge that pursuant to the terms and conditions of this Agreement, Contractor shall operate a commercial parking facility in the Garage, as well as all improvements to the Garage and the access lanes thereto. Except as expressly provided herein, Owner shall have no obligation to undertake any alterations or improvements to the Garage and shall deliver the Garage to Contractor on April 1, 2001, and Contractor shall accept the Garage from Owner in its "as-is" condition as of the date of such delivery. Notwithstanding anything to the contrary contained herein, it is hereby understood and agreed that Contractor shall have no rights whatsoever in and to any portion of the Building other than the Garage and access lanes thereto.

   B. Contractor shall operate a commercial parking facility in the Garage throughout the Term of this Agreement in accordance with the terms hereof. Contractor shall operate said parking areas in the Garage in a safe, prudent and professional manner and in compliance with the terms of this Agreement, and in accordance with Owner's directives as well as all laws, statutes, codes and regulations applicable to the Garage and Contractor's operations therein. Owner represents to the best of its knowledge that the free and discounted parking noted in the attached Exhibit A comprises all of the free and discounted parking and no other as of the Commencement Date. If Owner has granted or shall grant additional free or discounted parking other than what is listed in Exhibit A, then Owner shall discuss same with Contractor and shall reduce the Minimum Fee due hereunder by an amount agreed to by both Owner and Contractor.

   C. Within sixty days (60) days following the Commencement Date (as defined below), Contractor shall complete (in accordance with Section 6 hereof), at Contractor's sole cost and expense, the following work to the Garage: restriping the Garage to designate parking spaces (including the number of handicapped individual parking spaces required by local code), re-lamping any nonfunctioning light fixtures (provided that Owner shall deliver the Premises upon Commencement with all such light fixtures in good working order) and pressure cleaning the entire Garage, all in a good and workmanlike manner, lien free, and in accordance with applicable Laws (as hereinafter defined).

2. **Conditions of Agreement and Term.**

   In addition to the terms set forth herein, Contractor's operation of the Garage shall be subject to any and all: (i) commitments made by Owner to present and/or prospective tenants of the Building with respect to parking and/or access rights in the Garage, provided Owner shall communicate all such commitments to Contractor in writing, and provided any such commitments involving free or discounted parking shall be handled in accordance with Section 1(B) above, (ii) existing rights-of-way and easements as disclosed by Owner, and (iii) applicable Laws.

Term

A.    The Term of this Agreement shall be for a period of one (1) year, commencing on May 1, 2001, (the "**Commencement Date**") and expiring on April 30, 2002 (the "Termination Date"), automatically renewing for sixty (60) day periods there after unless earlier terminated in accordance with the terms hereof. Either Owner or Contractor may terminate this Agreement at any time during the Term for any reason or no reason upon sixty (60) days prior written notice to the other party.

B.    This Agreement shall automatically terminate without further notice upon delivery to Contractor of notice that Owner has sold or otherwise transferred its leasehold interest in and to the Garage and/or the Property to a third party.

C.    In the event of a termination of this Agreement in accordance with the terms of this Section 3 or any other provision of this Agreement, the parties shall remain obligated for all obligations accruing hereunder prior to the effective date of such termination, and upon such effective date of termination, Contractor shall immediately: (i) cease all operations therein, (ii) remove all of Contractor's personnel and personal property and equipment from the Garage, (iii) surrender all keys to the Contractor's Space or any equipment or improvements therein to Owner, and (iv) leave the Garage and all improvements and equipment therein in broom clean condition and in the same condition as of the Commencement Date (plus any improvements and alterations approved by Owner), normal wear and tear and damage by fire or other casualty excepted. Should Contractor fail to fulfill the foregoing requirements immediately upon termination, Owner may, in addition to any remedies available at law or in equity, enforce the same by self help, using force if reasonably necessary to effectuate the same, without any liability to Contractor or Contractor's agents, contractors or employees, unless the same arises from Owner's gross negligence or willful misconduct.

3.    **Fees**

A.    Contractor covenants and agrees to pay Owner throughout the Term of this Agreement an annual minimum fee at the initial rate of One Hundred Eighty-five Thousand Dollars ($185,000) ("**Minimum Fee**"), which initial Minimum Fee shall be payable in equal monthly installments of $15,416.67. The first installment of the Minimum Fee shall be payable on the first day of the first full calendar month during the Term (unless expressly provided to the contrary herein) and the remaining installments shall be payable, in advance, without demand, deduction or offset except as expressly permitted herein, on the first day of each calendar month during the Term hereof to Owner at the following address: Starwood Urban Retail I, LLC, c/o Starwood Urban Investments, LLC, 1320 19th Street, N.W., Suite 800, Washington, D.C. 20036, Attn: Constance Collins Davis, or such other address as Owner may, from time to time, designate by written notice to Contractor. If the Commencement Date is not the first day of a calendar month, the parties agree that the first installment of the Minimum Fee payable hereunder shall include: (i) one full monthly installment of the Minimum Fee, plus (ii) a partial monthly installment of the Minimum Fee for the period beginning on the Commencement Date and ending on the last day of the calendar month in which the Commencement Date occurs, which amount shall be a prorated portion of a monthly installment based upon the number of days during such period.

B.    In addition to Minimum Fees, beginning on the Commencement Date, Contractor shall pay to Owner annually on the date hereinafter specified Percentage Fees in an amount equal to seventy percent (70%) of the Gross Parking Revenue (as defined below) collected by Contractor in the operation of the Garage in excess of Three Hundred Thousand Dollars ($300,000.00) ("**Annual Percentage Fee Threshold**") per calendar year (each, a "**Gross Revenue Year**") or portion thereof, which Percentage Fees shall be paid to Owner in quarterly installments in accordance with the terms of this Paragraph B. "**Gross Parking Revenue,**" as such term is used in this Agreement, shall mean all sums and revenues (whether in cash, by credit or otherwise, and whether received in or outside of the Garage) of Contractor and of all licensees and concessionaires of Contractor (without hereby implying Owner's consent to any licensing or concession of all or any portion of the Garage) relating to all business conducted upon, in, at, or arising from the Garage including, but not limited to, all rents, charges, fees and other sums collected for the use of, and for licenses to occupy, parking spaces, whether on an hourly, daily, weekly, monthly or other basis; the actual charge for services performed in, at, from or arising out of the use of the Garage (including, without limitation, car washing and

detailing, without hereby implying Owner's consent thereto), whether wholesale or retail, and including the value of all consideration other than money received or promised for any of the foregoing, without reservation or deduction for inability or failure to collect; all sales made or performed by means of mechanical or other vending devices in the Garage, whether such business be conducted by Contractor or by any licensee or concessionaire of Contractor (without hereby implying Owner's consent to the use or operation of such devices); all amounts which Contractor, or any licensee or concessionaire, in the normal and customary course of its business would credit or attribute to its operation at the Garage or any part thereof; and any payment to Contractor of a service fee or similar fee for the collection of any sales tax; less any sales tax, parking tax, license fee, levy, impact, or other charge which Contractor is required by law, ordinance or other governmental regulation to collect from patrons of or vehicles entering the Garage to the extent that the same is collected by Contractor and paid to the applicable governmental authority. Each charge or sale upon installment or credit shall be treated as a sale for the full price in the month during which such charge or sale shall be made, irrespective of the time when Contractor shall receive payment (whether full or partial) therefor. The amount of any deposit forfeited to Contractor by the depositor shall be included in Gross Parking Revenue of the month in which such deposit is so forfeited. Contractor shall submit to Owner no later than the fifteenth (15th) day following the end of each calendar quarter or portion thereof during the Term, a statement setting forth Contractor's Gross Parking Revenue for the immediately preceding calendar quarter. Said statement shall be accompanied by an installment payment equal to fifty percent (50%) of the amount, if any, by which Gross Parking Revenue for the immediately preceding calendar quarter exceeds Seventy-seven Thousand Five Hundred Dollars ($77,500.00) (**"Quarterly Percentage Fee Threshold"**). In the event Contractor fails to deliver to Owner quarterly statements within seven (7) days following Owner's request therefor, Contractor shall pay Owner Three Hundred Dollars ($300.00) for each month or partial month as an additional fee during which Owner has not received such statements. In addition, no later than the forty-fifth (45th) day after the expiration of each Gross Revenue Year during the Term, and the forty-fifth (45th) day after the expiration or termination of the Term hereof, Contractor shall submit to Owner a statement of Contractor's Gross Parking Revenue for the immediately preceding full or partial (as described below) Gross Revenue Year. Such statement shall be accompanied by a calculation of the total Percentage Fees payable hereunder with respect to such immediately preceding full or partial Gross Revenue Year, and a payment in full of any amount by which the Annual Percentage Fees payable pursuant to the terms hereof exceed the quarterly installments thereof previously paid with respect to such Gross Revenue Year. If the annual Percentage Fees payable with respect to any full or partial Gross Revenue Year are less than the total of the quarterly installments paid hereunder by Contractor with respect to such Gross Revenue Year, then the amount of such overpayment by Contractor shall be credited against the next due installment(s) of Percentage Fees payable hereunder (or following the expiration or termination of the Term hereof, refunded to Contractor). All such quarterly and annual statements shall be certified by a financial officer of Contractor as being accurate and calculated in accordance with the terms of this Agreement and in accordance with Generally Accepted Accounting Principles, consistently applied. In the event that the period at the beginning or end of the Term includes a partial Gross Revenue Year or this Agreement is terminated prior to the scheduled expiration of the Term, Contractor shall pay Owner Percentage Fees with respect to such partial Gross Revenue Year, which Fees shall be calculated based on an adjusted Annual Percentage Fee Threshold, which Threshold shall be adjusted on a per diem basis to reflect the number of days in such Gross Revenue Year which are included in the Term of this Agreement.

C.      In order to enable Owner to verify the amount of Percentage Fees payable hereunder, Contractor shall keep and maintain at Contractor's primary offices in the Washington, D.C. area, and update on a quarterly basis, true, correct and complete books of account and records with respect to all operations of the business conducted in the Garage, including the recording of Gross Parking Revenue and all tax returns prepared and/or filed related to operations in the Garage. All such books and records shall be kept in accordance with generally accepted accounting principles, consistently applied, and shall be segregated from all other matters. All such books, records, and other documentation pertaining to the business conducted in the Garage during any calendar year during the term of this Agreement shall be kept and maintained for at least three (3) years after the end of such calendar year. At any time or from time to time after reasonable prior notice to Contractor, Owner and its agents and accountants, shall have the right to make any examination and audit of the books, records and other materials which Contractor is required to retain. If any such audit or inspection shall disclose that Percentage Fees payable for any period of time exceeds the Percentage Fees theretofore paid by

Contractor for such period, then Contractor shall pay the amount of such excess plus, as an additional charge hereunder, interest thereon at the Default Rate (as defined below) for such period. In addition, if such audit or inspection shall disclose that the actual Percentage Fees due for such period exceeds the amount paid by Contractor by more than three percent (3%) per annum, the same shall constitute an Event of Default hereunder entitling Owner to exercise any and all available remedies, and Contractor shall pay, as an additional charge hereunder, the cost of such examination or audit. The acceptance by Owner of payments of Percentage Fees which are less than the full amount due or statements of Percentage Fees shall be without prejudice, and shall not constitute a waiver of Owner's rights either to claim a deficiency in the payments of Percentage Fees or to audit Contractor's books and records. If Contractor shall fail to deliver any quarterly or annual statement required hereunder within the period specified above, then Owner shall have the right, in addition to any and all other rights and remedies available to Owner, to employ an accountant to examine Contractor's books and records related to the same. The determination of Contractor's Gross Parking Revenue by such accountant shall be binding on Owner and Contractor, and Contractor shall pay to Owner the cost of such examination as an additional charge due hereunder. If any audit or inspection shall disclose that Percentage Fees payable for any period of time are less than the Percentage Fees theretofore paid by Contractor for such period, then Owner shall immediately pay to Contractor the amount of such overpayment.

D.     All sums payable by Contractor under this Agreement, other than the Minimum Fees and Percentage Fees, shall constitute "**additional charges**" hereunder, and such additional charges, Minimum Fees and Percentage Fees are sometimes collectively referred to herein as "**Fees.**" If Owner shall at any time accept Fees after it shall have become due and payable, or in an amount less than the full amount due, such acceptance shall not excuse a delay upon subsequent occasions or constitute a waiver of any of Owner's rights hereunder. Contractor will pay, as an additional charge, a late charge equal to five percent (5%) of any installment of Minimum Fees, Percentage Fees or additional charges which is not paid within ten (10) days of the due date. In addition, with respect to all installments of Minimum Fees, Percentage Fees and additional charges not timely paid in accordance with the terms hereof, Owner, at its sole option, may require Contractor to pay, as an additional charge, interest on such outstanding amounts at the rate ("**Default Rate**") equal to the greater of eighteen percent (18%) per annum or the rate per annum which is five (5) whole percentage points higher than the prime rate published in the Money Rates section of The Wall Street Journal, from the date due to the date of payment thereof by Contractor. Said interest rate shall apply also to any reimbursements or other amounts due Contractor from Owner which are not timely paid.

E.     If Contractor fails to open the Garage for business with the public fully staffed on or before the Commencement Date (the "**Outside Date**") or fails to continuously operate the Garage for business with the public fully staffed at all times thereafter, and such failure is not due to a force majeure event or Owner's own gross negligence or willful misconduct, then Contractor shall pay to Owner, in addition to the Minimum Fees and all other sums payable under this Agreement, an amount equal to three (3) times the per diem Minimum Fee then in effect for each day during the period in which Contractor so fails to open for business or to operate. Such amount shall be considered additional charges due and payable hereunder due to the loss of any Percentage Fees that may have been earned by Owner during such period.

4.    **Maintenance and Replacement**

A.     Throughout the Term of the Agreement, Contractor shall, at its own cost and expense, keep the Garage and all accessways thereto in good order and condition and repair and maintain in a good and workmanlike manner, lien free, and in accordance with all applicable Laws the same and all equipment and fixtures thereon serving the Garage and all accessways thereto, which repair and maintenance obligations shall include but not be limited to the following, which shall be performed at the specified intervals or if no intervals are specified, from time to time as deemed necessary by Owner: regular periodic power vacuum sweeping, powerwashing (at least twice per year), restriping of the Garage (annually) and painting of curbs, operation and maintenance of all signs and equipment, recharging of fire extinguishers, trash removal, snow and ice removal, and repair and replacement of lighting fixtures, tubes, bulbs and ballasts, and all other repair, maintenance and replacement responsibilities which are not the responsibility of Owner. Upon the termination of this Agreement, the Garage shall be left by Contractor in as good condition as received (plus any improvements or alterations thereto approved by Owner), ordinary wear and tear and other casualty excepted.

B.    Throughout the Term of this Agreement, Owner shall, at its own cost and expense, maintain, repair and replace the structural portions of the Garage (except to the extent any such maintenance, repair or replacement is necessitated by any act or omission of the Contractor, including any valet parking, in any of which events such maintenance, repair or replacement shall be performed by Contractor at Contractor's sole cost and expense). Owner also shall, at its own cost and expense, maintain, repair and replace the ventilation system. Notwithstanding any provision hereof to the contrary, Owner shall not be required to make any repairs or replacements necessitated by reason of any act or omission of Contractor, its employees, agents, licensees or invitees; but if Owner does make any such repairs, Contractor agrees to promptly, upon demand, reimburse Owner for the full costs thereof as an additional charge hereunder provided Contractor is first given written notice of the repair need and afforded a reasonable period of time, not to exceed thirty (30) days after Contractor's receipt of notice, in which to make the repair itself. In addition, if Contractor fails to perform its maintenance, repair and replacement obligations set forth in Paragraph A above, Owner may, but shall not be obligated to perform the same at Contractor's expense, the commercially reasonable cost of which along with interest thereon at the Default Rate shall be payable by Contractor to Owner upon demand as an additional charge hereunder provided Contractor is first given written notice of the repair need and afforded a reasonable period of time, not to exceed thirty (30) days after Contractor's receipt of notice, in which to make the repair itself. Owner also shall not be responsible for the maintenance, repair or replacement of any fixtures and equipment in the Garage which do not serve the Garage.

5.    **Alterations and Improvements**

A.    Except as expressly required in this Agreement, Contractor shall have no right to make changes, alterations, additions or improvements (collectively, "**alterations**") to or upon the Garage, unless Contractor first obtains the prior written consent of Owner, which consent may be withheld or conditioned in Owner's sole and absolute discretion. All authorized alterations shall immediately become a part of the Garage and, thus, Owner's property. All alterations shall be done in a good and workmanlike manner, using new materials, in accordance with all applicable codes, statutes, regulations and other legal requirements, and by contractors who are fully licensed and adequately insured (including workers' compensation coverage in the statutorily required amount and public liability and property damage coverage in the aggregate amount of at least $1,000,000). Contractor shall not permit a mechanic's lien(s) to be placed upon the Garage or the Property as a result of any alterations or improvements made by Contractor or on behalf of Contractor, and Contractor agrees that if any such lien be filed on account of the acts of Contractor, to pay or bond off the same within ten (10) days after notice thereof. In the event that Contractor fails to pay any such lien, it may be paid by Owner and the cost charged to Contractor as an additional charge under this Agreement. Contractor hereby expressly recognizes that in no event shall it be deemed the agent of Owner and no contractor of Contractor shall by virtue of its contract be entitled to assert any lien against the Property.

B.    All trade fixtures, personal property and equipment placed in the Garage by Contractor, its agents, employees, licensees and invitees shall remain in the Garage at Contractor's such party's sole risk and Owner shall have no responsibility therefor except to the extent Owner's gross negligence or willful misconduct results in loss or damage to such fixtures and property of Contractor. Provided that Contractor is not then in default of any of its obligations hereunder, at any time prior to the expiration or termination of this Agreement, Contractor may remove all trade fixtures, personal property and moveable equipment which have been placed in the Garage by Contractor, provided that Contractor repairs any damage to the Garage caused by such removal and restores the Garage to its condition prior to such removal.

6.    **Use of Garage**

A.    The Garage shall be used by Contractor for the purpose of operating a parking facility for use by the general public and for no other purpose. Contractor agrees to use the Garage and operate therein in a manner that complies with all leases and other agreements to which Owner is a party by which Owner grants third parties rights with respect to the Garage and/or parking rights therein provided Owner gives Contractor a copy of each such lease or other agreement and all amendments thereof. Contractor will be responsible for obtaining all licenses and permits, and complying with all zoning and other Laws governing the Garage and Contractor's use thereof. Contractor will not use or permit the Garage to be used for any illegal

purpose, nor in any manner to create any nuisance or interfere with the use by other tenants in the Building of their premises therein.

B.    Contractor will operate its business in the Garage in a professional, first class and commercially reasonable manner with the purpose of maximizing Gross Parking Revenue. Contractor shall not divert or cause to be diverted vehicles from the Garage (except when the same is filled and without further capacity to accept vehicles) to any other parking lot or parking facility operated by Contractor or its affiliates. Contractor will operate a parking facility in the Garage on a continuous basis and keep the Garage open for business during at least the hours of 7:00 a.m. to 5:00 p.m. Monday through Friday , and during such other hours as may be approved by Owner in writing.

C.    Contractor shall collect or cause to be collected and remitted to the appropriate governmental authorities any and all sales tax, parking tax, license fee, levy, impact, or other charge or tax imposed or assessed with respect to the Contractor's use and operation of the Garage. Contractor shall pay to the appropriate governmental authorities any such taxes or assessments arising from or related to the use and operation of the Garage (which the parties acknowledge shall not include real property taxes, which shall be payable by Owner).

D.    Owner shall pay all utility charges incurred in connection with the use and operation of the Garage, which utility charges shall include but not be limited to charges relating to: electricity, water, if applicable, lighting systems, and other utilities supplied to the Garage (including any equipment and installation charges related thereto). Owner shall have no liability whatsoever due to any interruption of service or failure of any utility service to the Garage, unless such interruption or failure is the direct result of Owner's gross negligence (and in the event of such an interruption or failure which results from Owner's gross negligence, Contractor's sole remedy shall be the temporary suspension of Contractor's obligation to pay the regularly-recurring Fees hereunder until such service is restored).

E.    Contractor shall be solely responsible for all operating expenses and costs of any kind associated with the operation of Contractor's business in the Garage including but not limited to all costs of any kind associated with staffing the Garage (the parties acknowledging that Contractor shall be responsible for hiring, training, supervising and compensating its own employees to operate the parking area in the Garage and otherwise carry out Contractor's obligations hereunder).

F.    Contractor shall not modify the traffic control, safety or security systems in the Garage without Owner's prior written consent, which consent shall not be unreasonably withheld provided that such proposed modifications do not: (i) conflict with any other agreement to which Owner may be a party in any way related to or affecting the Garage or the parking available therein, (ii) adversely impact upon the number and size of the parking spaces available in the Garage, (iii) adversely impact upon the access to the Garage, or (iv) adversely impact upon the safety of patrons of the Building and/or the Garage and/or the security of the vehicles or other personal property therein.

G.    Contractor shall establish, charge and collect commercially reasonable parking fees for the use of reserved, unreserved and/or transient parking in or about the Garage, which fees shall be subject to Owner's prior written approval, which approval shall not be unreasonably withheld. Contractor recognizes that such fees may affect other existing and future agreements

to which owner is a party (including but not limited to lease agreements between Owner and other tenants of the Building). Contractor shall at all times recognize and comply with any rights and privileges granted by Owner to third parties (including but not limited to tenants of the Building) with respect to parking rights and access rights to the Garage, subject to the provisions of Section 1(B) hereof. Contractor shall promptly consider and attend to all complaints and/or comments of Owner and users of the Garage (including tenants of the Building and their employees, agents and invitees). Contractor shall protect, indemnify, hold harmless and defend Owner, its agents and employees of and from any and all liability, loss, cost, damage or expense (including reasonable attorneys' fees and court costs) arising out of any claims, liabilities, demands or causes of action (herein, collectively, "**Claims**") related to Contractor's failure to comply with its obligations under this Paragraph G.

      H.     Contractor shall not burn trash in or about the Garage. Contractor shall not store or permit accumulations of any trash, garbage, rubbish or other refuse inside or outside of the

Garage, except in suitable trash receptacles located on the Garage approved (and in locations approved) by Owner. Contractor shall purchase and maintain all trash receptacles. Contractor shall cause all trash to be removed from the receptacles and the Garage and placed in a location and in a manner reasonably approved by Owner.

I.     Contractor shall not use or occupy the Garage for any unlawful purpose, or in any manner that will violate the certificate of occupancy for the Building or that will constitute waste, nuisance or unreasonable annoyance to Owner or any tenant or user of the Property, or in any manner that will decrease the number of parking spaces located on the Property from the number required by law. Contractor shall comply with all present and future laws (including the Americans with Disabilities Act (the "ADA") and the regulations promulgated thereunder, as the same may be amended from time to time) except to the extent such laws require modifications to the Property of a structural or capital nature, and all Environmental Laws (as hereinafter defined), ordinances (including zoning ordinances and land use requirements), regulations, permits, orders and recommendations (including those made by any public or private agency having authority over insurance rates) (collectively, "Laws") applicable to the Property generally or the Garage particularly concerning the Contractor's use, occupancy and condition of the Garage and all machinery, equipment, and improvements therein, all of which shall be complied with in a timely manner at Contractor's sole expense. If any such Law requires a use permit or license for the Garage or the operation of the business conducted thereon, then Contractor shall obtain and keep current such permit or license at Contractor's expense and shall promptly deliver a copy thereof to Owner. Use of the Garage is subject to all covenants, conditions and restrictions of record. Contractor shall not cause or permit any Hazardous Materials to be generated, used, released, stored or disposed of in or about the Property, except for *de minimus* amounts of gasoline permitted pursuant to applicable Environmental Laws and further shall maintain the Garage at all times in compliance with all Environmental Laws. At the expiration or earlier termination of this Agreement, Contractor shall surrender the Garage to Owner free of Hazardous Materials placed therein by Contractor and in compliance with all Environmental Laws. "**Hazardous Materials**" means (a) asbestos and any asbestos containing material and any substance that is then defined or listed in, or otherwise classified pursuant to, any Environmental Law or any other applicable Law as a "**hazardous substance**," "**hazardous material**," "**hazardous waste**," "**infectious waste**," "**toxic substance**," toxic pollutant" or any other formulation intended to define, list, or classify substances by reason of deleterious properties such as ignitability, corrosivity, reactivity, carcinogenicity, toxicity, reproductive toxicity, or Toxicity Characteristic Leaching Procedure (TCLP) toxicity, (b) any petroleum and drilling fluids, produced waters, and other wastes associated with the exploration, development or production of crude oil, natural gas, or geothermal resources, and (c) any petroleum product, polychlorinated biphenyls, urea formaldehyde, radon gas, radioactive material (including any source, special nuclear, or by-product material), medical waste, chlorofluorocarbon, lead or lead-based product, and any other substance whose presence could be detrimental to the Property or hazardous to health or the environment. "**Environmental Law**" means any present and future Law and any amendments (whether common law, statute, rule, order, regulation or otherwise), permits and other requirements or guidelines of governmental authorities applicable to the Property and relating to the environment and environmental conditions or to any Hazardous Material (including, CERCLA, 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq., Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., the Clean Air Act, 33 U.S.C. § 7401 et seq., the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq. the Safe Drinking Water Act 42 U.S.C. § 300f et seq. the Emergency Planning and

Community Right-To-Know Act, 42 U.S.C. § 1101 et seq., the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., and any so-called **"Super Fund"** or **"Super Lien"** law, any Law requiring the filing of reports and notices relating to hazardous substances, environmental laws administered by the Environmental Protection Agency and any similar state and local Laws, all amendments thereto and all regulations, orders, decisions, and decrees now or hereafter promulgated thereunder concerning the environment, industrial hygiene or public health or safety.) Notwithstanding any termination of this Agreement, Contractor shall indemnify and hold Owner, its employees and agents harmless from and against any damage, injury, loss, liability, charge, demand or claim based on or arising out of the presence or removal of, or failure to remove, Hazardous Materials generated, used, released, stored or disposed of by Contractor or any invitee of Contractor in or about the Property.  In addition, Contractor shall give Owner immediate verbal and follow-up written notice of any actual or threatened Environmental Default, which Environmental Default Contractor shall cure in accordance with

all Environmental Laws and to the satisfaction of Owner and only after Contractor has obtained Owner's prior written consent, which shall not be unreasonably withheld. An **"Environmental Default"** means any of the following caused by Contractor or any invitee of Contractor: a violation of an Environmental Law; a release, spill or discharge of a Hazardous Material on or from the Garage or the Property; an environmental condition requiring responsive action ; or an emergency environmental condition. Upon any Environmental Default, in addition to all other rights available to Owner under this Agreement, at law or in equity, Owner shall have the right but not the obligation to immediately enter the Garage, to supervise and approve any actions taken by Contractor to address the Environmental Default, and, if Contractor fails to address same to Owner's reasonable satisfaction within a reasonable period of time not to exceed thirty (30) days after receipt of written notice from Owner, to perform, at Contractor's sole cost and expense, any lawful action necessary to address same. Owner acknowledges that Owner has given Contractor no information as to the environmental condition of the Garage and Property and that Contractor has not made an investigation of the environmental condition of the Garage and Property. Consequently, notwithstanding any contrary provision in this Subsection 7(I) or elsewhere in this Agreement, under no circumstances shall Contractor be responsible for any claims, actions, suits, losses, damages, expenses or other liability whatsoever, including without limitation costs of investigation or remediation, consequential damages, loss of income with respect to the Property, fines or penalties and legal fees (collectively, "Losses"), in any way arising out of or related to: (i) a Hazardous Materials release on, in or under the Property, or a violation of Environmental Law, caused or permitted by Owner, its employees, agents, successors or assigns; (ii) Hazardous Materials existing on, in or under the Garage or Property, or violation of an Environmental Law, as a result of an incident, act or omission of any third party prior to commencement of Contractor's operations hereunder; or (iii) Hazardous Materials migrating on, in or under the Garage or Property from off-site due to the act or omission of Owner or any third party, and Owner hereby agrees to protect, defend, indemnify and save harmless Contractor, its partners, officers, directors, employees and invitees from and against any and all Losses in connection with all Hazardous Materials releases and Environmental Law violations under Subsections (i), (ii) and (iii) above.

J.      Contractor shall not permit any noise, fume or odor that is reasonably objectionable to the general public to emanate from the Garage, except such noises, fumes or odors that are normal and customary in connection with the operation of an automobile parking lot.

7.     **Insurance**

A.      Contractor shall procure and maintain throughout the Term of this Agreement the following types of insurance with respect to the Garage and Contractor's use thereof and operation therein, having coverage limits not less than those set forth below: (1) Commercial general liability insurance will limits of liability of not less than $5,000,000 for injury or death of any one person, and not less than $5,000,000 for injury or death to more than one person in any one occurrence; (2) Garagekeepers' legal liability insurance in an amount not less than $2,500,000.00 Combined Single Limit per occurrence; (3) Crime Insurance in an amount of not less than $10,000.00 Commercial Blanket Bond, $10,000.00 Broad Form Money - Inside and $10,000.00 Broad Form Money - Outside; (4) Fire and casualty insurance covering the full replacement cost of all personal property of Contractor located in the Garage, and (5) Worker's Compensation Insurance in at least the statutorily required amounts. All of the policies required in clauses (1) through (3) above shall name Owner, and any designee of Owner, as additional

B.     All insurance required under this Agreement shall be issued by insurance companies licensed to do business in the State of Maryland. Such companies shall have a policyholder rating of at least "**A**" and be assigned a financial size category of at least "**Class VIII**" as rated in the most recent edition of "**Best's Key Rating Guide**" for insurance companies. Each policy shall contain an endorsement requiring thirty days written notice from the insurance company to Owner before cancellation or any change in the coverage, scope or amount of any policy. Each policy, or a certificate showing it is in effect, together with evidence of payment of premiums, shall be deposited with Owner at the commencement of the Agreement, and renewal certificates or copies of renewal policies shall be delivered to Owner at least thirty days prior to the expiration date of any policy.

G:\AGREEMENTS\2568JCBDraft#2.doc                    8

C.    Contractor hereby waives every right or cause of action for the events which occur or accrue during the Term of this Agreement for any and all loss of, or damage to, any of its property (whether or not such loss or damage is caused by the fault or negligence of Owner or anyone for whom Owner may be responsible), which loss or damage is covered by valid and collectible fire, extended coverage, "**All Risk**" or similar policies covering real property, personal property or business interruption insurance policies, to the extent that such loss or damage is recovered under said insurance policies or would have been covered by any policy of insurance required to be carried hereunder. Said waiver is in addition to, and not in limitation or derogation of, any other waiver or release contained in this Agreement with respect to any loss or damage to property of the parties hereto. Contractor will give its insurance carrier written notice of the terms of such waiver, and the insurance policies will be properly endorsed, if necessary, to prevent the invalidation of coverage by reason of said waiver.

## 8.    Assignment and Subletting

The parties acknowledge that this Agreement is a personal services contract, and that Contractor may not assign, transfer, mortgage or encumber this Agreement or assign or transfer any of Contractor's duties, obligations or rights hereunder, or lease or sublet or grant any license or concession to any third party to operate in or use the Garage or any part thereof, nor shall any of the foregoing be effectuated by operation of law or otherwise, without the prior written consent of Owner, which consent may be withheld in Owner's sole and absolute discretion.

## 9.    Default

A.    Each of the following shall constitute an "**Event of Default**" under the Agreement, entitling Owner to exercise all remedies available hereunder and under applicable law: (1) Contractor's failure to pay any installment or other payment of Fees when the same shall become due and payable, which failure continues for a period of five (5) days after the date that Contractor receives written notice from Owner that such installment or payment is due and payable; (2) Contractor's failure to pay any installment or other payment of Fees when the same shall become due and payable during any twelve (12) month period in which Owner has previously delivered notice of default to Contractor in accordance with the terms of clause (1) above; (3) dissolution or liquidation of Contractor; (4) the attempted or purported assignment, transfer, mortgaging or encumbering of this Agreement; (5) the failure by Contractor for any period of time to continuously operate its business in the Garage in the manner provided under this Agreement except where due to a force majeure event or Owner's act or omission; (6) the occurrence of an Event of Insolvency (as defined below); and (7) Contractor's violation of or failure to perform or observe any other term, provision, covenant, condition, obligation or requirement of Contractor under this Agreement, which failure shall continue uncured for a period of thirty (30) days after Contractor's receipt of written notice thereof from Owner; it being understood and agreed that, in the event such failure to perform or observe a term of this Agreement shall be of such a nature that it is incapable of being cured within the thirty (30) day period, Contractor's obligation to cure hereunder shall be satisfied by Contractor undertaking diligent and continuous efforts to cure such default within said thirty (30) day period and thereafter diligently prosecuting the same to completion. For purposes of this Agreement, an "**Event of Insolvency**" shall include any of the following: (i) if Contractor becomes "**Insolvent**", as defined in Title 11 of the United States Code, entitled "**Bankruptcy**", 11 U.S.C. Section 101 et seq. (hereinafter called the "**Bankruptcy Code**"), or under the insolvency laws of any state, district, commonwealth or territory of the United States of America ("**Insolvency Laws**"); or (ii) if a receiver or custodian is appointed for any or all of Contractor's property or assets, or if there is instituted a foreclosure action on any of Contractor's property; or (iii) if Contractor files a voluntary petition under the Bankruptcy Code or Insolvency Laws; or (iv) if there is filed an involuntary petition against Contractor as the subject debtor under the Bankruptcy Code or Insolvency Laws; or (v) if Contractor makes or consents to an assignment of its assets, in whole or in part, for the benefit of creditors, or a common law composition of creditors.

B.    At any time following the happening of any of the aforementioned Events of Default, in addition to any other rights or remedies of Owner set forth herein or at law or at equity, Owner may, at its sole option without further notice to Contractor, exercise any of the following remedies (said remedies being cumulative): (1) terminate this Agreement; (2) terminate Contractor's right to operate its business and use the Garage and prohibit Contractor and its agents and employees from accessing the Garage with or without process of law, using self-help, including lockout and/or force if reasonably necessary, and remove all persons and

property therefrom; and/or (3) declare immediately due and payable all Minimum Fees and additional charges and estimated Percentage Fees (pro-rated for period through the date of termination) due hereunder through the date of termination. In addition, Owner, at its sole discretion, may at any time, offset and set off any amounts owed by Contractor (and/or any of its affiliates or related companies or entities) to Owner (and/or any of its affiliates or related companies or entities) against any amounts owed by Owner (and/or any of its affiliates or related companies or entities) to Contractor (and/or any of its affiliates or related companies or entities).

C.    If Owner exercises either of its remedies set forth in clause B (1) or (2) above, Contractor will immediately: (i) cease all operations therein, (ii) remove all of Contractor's personnel and personal property and equipment from the Garage, (iii) surrender all keys to the Garage or any equipment or improvements therein to Owner, and (iv) leave the Garage and all improvements and equipment therein in broom clean condition and in the same condition as of the Commencement Date (plus any improvements and alterations approved by Owner), normal wear and tear and damage by fire or other casualty excepted. Should Contractor fail to fulfill the foregoing requirements immediately upon such termination, Owner may, in addition to any remedies available at law or in equity, enforce the same by self help, using force if reasonably necessary to effectuate the same, without any liability to Contractor or Contractor's agents, contractors or employees. Should any statute, regulation, law, order or ruling of any court or governmental authority be construed to require Owner to deliver to Contractor a notice to quit or termination notice in lieu of or in addition to any notice provided hereunder in connection with Owner's exercise of its remedies hereunder or under applicable law, Contractor hereby expressly waives any such requirement.

D.    Neither Owner's termination of the Agreement or termination of Contractor's right to operate shall in any way affect Contractor's obligation to pay all Fees accrued under the Agreement through the date of such termination, plus all damages suffered by Owner as a result of such Event of Default and/or termination, as set forth below. Contractor shall pay to Owner all Fees and all damages, costs, expenses and liabilities of any kind incurred or suffered by Owner as a result of Contractor's Event of Default or in any way connected with Owner exercise of its remedies hereunder.

E.    At any time following an Event of Default, Owner may enter into an agreement with a third party to operate the Garage and receive fees therefor. Under no circumstances shall Contractor be entitled to any surplus fees received by Owner as a result of such an agreement in excess of the Fees payable hereunder.

F.    In addition to the remedies set forth above, Owner may: (i) enjoin any breach or threatened breach by Contractor of any of the covenants, agreements, terms of conditions in this Agreement, or (ii) cure the Event of Default at the expense of Contractor, which cure may include Owner's entry into the Garage, by force if necessary, without being liable for prosecution or any claim for damages therefor, to do whatever Contractor is obligated to do under the terms of this Agreement. Under such circumstances, Contractor shall reimburse Owner, on demand, as an additional charge, for any expenses Owner incurs in curing such Event of Default and/or performing such obligations of Contractor plus interest thereon at the Default Rate. Neither Owner nor Owner's agents will be liable for any damages to Contractor or any other party due to such action.

G.    If at any time after the execution of this Agreement, (i) Owner shall undertake action or incur expenses (including reasonable attorney's fees) (which decision to undertake

action or incur expenses shall be at the sole and absolute discretion of Owner) in litigation, for the purposes of enforcing the terms of the Agreement against Contractor or otherwise exercising Owner's remedies or protecting Owner's rights hereunder, or (ii) Owner shall incur expenses as a result of an action brought by or against Contractor, Contractor shall reimburse Owner for the expenses, including reasonable attorneys' fees incurred thereby as an additional charge provided Owner prevails in any such action.

H.    If any property belonging to Contractor, or otherwise, is found upon the Garage at the time of the termination of Contractor's right to operate in the Garage or termination of this Agreement, Owner may remove and store the same in any warehouse, at Contractor's cost, or, in Owner's sole discretion, Owner may deem the same abandoned by Contractor and dispose of such property accordingly.  Pursuit of any of the foregoing remedies is not a forfeiture or waiver of any Fees due to Owner hereunder or of any damages accruing to Owner by reason of the

violation of any of the provisions herein contained. The foregoing rights and remedies are cumulative and in addition to any other rights granted to Owner by law, and the exercise of any of them shall not constitute an election excluding the exercise by Owner at any time of another, a different or an inconsistent remedy. The failure of Owner at any time to exercise any right or remedy is not a waiver of its right to exercise such right or remedy at any other future time.

I.    Owner shall not be in default unless Owner fails to perform obligations required of Owner within thirty (30) days after written notice by Contractor to Owner and to the holder of any mortgage or deed of trust covering the Garage whose name and address shall have therefor been furnished to Contractor in writing, specifying wherein Owner has failed to perform such obligations; provided, however, that if the nature of Owner's obligations is such that more than thirty (30) days are reasonably required for performance, then Owner shall not be in default if Owner commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion. In no event shall Contractor have the right to terminate this Agreement as a result of Owner's default and Contractor's remedies shall be limited to actual damages. Contractor's rights and remedies herein are subject to the rights of any ground lessor, mortgagee having an interest in the Garage. The prevailing party in any litigation hereunder shall be entitled to recover from the other party hereto all reasonable attorney's fees and legal costs incurred in such litigation .

## 10.    **Indemnity**

A.    Except for Claims (as defined below) arising from Owner's negligence or willful misconduct, Owner shall in no way be responsible for and Contractor shall protect, indemnify, hold harmless and defend Owner, its agents and employees of and from any and all liability, loss, cost, damage or expense (including reasonable attorneys' fees and court costs) arising out of any claims, liabilities, demands or causes of action (herein, collectively, **"Claims"**) by any person or persons on account of damage to property or injury to or death of any person, or any other event arising, directly or indirectly, out of, or from, or on account of: (i) any accident or other occurrence in, upon, at or from or connected with the Garage in any manner (unless the same is the direct result of the gross negligence or willful misconduct of Owner or any of its employees, agents or contractors other than Contractor hereunder) (ii) any accident or other occurrence in, upon, at or from, or connected in any manner with the Contractor's or any of its employee's, agent's or subcontractor's use or operation of the Garage by Contractor or any of its employees, agents or subcontractors, (iii) Contractor's or any of its employee's, agent's or subcontractor's non-performance of its obligations hereunder, (iv) Contractor (or any of its employees, agents or subcontractors) improvements in the Garage, (v) any of Contractor's or any of its employee's, agents or subcontractor's equipment, machinery, utilities, appliances or apparatus therein, or (vi) Contractor's or any of its employee's, agents or subcontractor's gross negligence or willful misconduct. Contractor further agrees to protect, indemnify, hold harmless and defend Owner, its agents and employees, at Contractor's sole expense, in any and all suits, legal or administrative proceedings instituted against Owner which arise out of such Claims and agrees to pay and satisfy any judgments rendered against Owner or any compromise by Contractor or settlement by Contractor of such Claims or judgments resulting from Contractor's or any of its employee's, agent's or subcontractor's use of and operation in the Garage.

B.    Owner agrees to protect, indemnify, defend and save harmless Contractor from and against any and all claims, suits, liabilities, loss, damage or expense (including reasonable attorneys' fees and court costs) based upon damage to, or destruction of, any property or injury to any person (including death) arising out of or attributable to Owner's gross negligence or willful misconduct or the non-performance by the Owner (including its employees, contractors, subcontractors or agents) of its obligations under this Agreement.

. C.    Contractor shall immediately notify Owner of any Claims made by third parties (including but not limited to tenants of the Building or governmental authorities) or any facts and circumstances which could give rise to a Claim in any way related to the Garage or the Property. Any party making a claim of indemnity hereunder shall promptly give written notice of such claim to the indemnifying party.

## 11.    **Condemnation**

In the event of any total taking of the Garage by eminent domain, or conveyance in lieu thereof (collectively, a **"taking"**) or if the Garage becomes unusable for the purposes

contemplated herein by reason of such action, this Agreement shall terminate on date of taking and all charges shall be prorated to such date. In the event of any partial taking of the Garage, either party may, by written notice to the other party delivered within ten (10) days after the occurrence thereof terminate this Agreement, and Fees will be prorated to termination. If neither party exercises such option, then this Agreement shall continue in force and effect and the Minimum Fees and the Percentage Fee Threshold shall be appropriately adjusted to reflect the square footage of the area so taken. For condemnation purposes, Owner and Contractor hereby agree that the phrase **"unusable for the purposes contemplated herein,"** shall be a condition which, from a commercially reasonable standpoint, renders the Garage unsuitable for Contractor to operate therein as contemplated hereby.

## 12.  Destruction of, or Damage to Garage

If the Garage is totally destroyed by fire, storm, lightning, earthquake, or other casualty (including destruction due to bombing, shelling, or other war damage), this Agreement shall be terminated as of the date of such casualty. If the Garage is damaged but not wholly destroyed by any such casualty, then this Agreement shall continue and the Minimum Fees and the Percentage Fee Threshold shall be appropriately adjusted to reflect the square footage of that portion of the Garage damaged, destroyed or rendered unusable (for the purposes contemplated herein, as defined above) by such casualty and Owner shall restore Garage to substantially the same condition as existed prior to such casualty to the extent of insurance proceeds received by Owner with respect to such casualty (which shall not include insurance proceeds which may be required to be paid to or at the direction of Owner's mortgagee, ground lessor or holder of a deed of trust with respect to the Property). Notwithstanding the foregoing, in the event that greater than thirty percent (30%) of the Garage is destroyed, either party may, by written notice to the other party delivered within sixty (60) days after the date of such casualty terminate this Agreement, and Fees will be prorated to termination.

## 13.  Failure to Cease Operations

If Contractor shall not immediately:  (i) cease all operations in the Garage, (ii) remove all of Contractor's personnel and personal property and equipment from the Garage, (iii) surrender all keys to the Garage or any equipment or improvements therein to Owner upon the expiration or termination of this Agreement, at Owner's sole option, this Agreement shall continue on a month-to-month basis, provided that the Minimum Fees and Percentage Fees shall be paid to and accepted by Owner, in advance, at three hundred percent (300%) of the rate of the Minimum Fees and Percentage Fees payable hereunder just prior to the expiration or termination of this Agreement (without giving effect to any suspension thereof); but Owner shall continue to be entitled to exercise its rights to prohibit Contractor and its agents and employees from accessing the Garage as set forth herein. Contractor shall be liable to Owner for any loss or damage which Owner may sustain by reason of Contractor's failure to cease all operations in the Garage, remove all of Contractor's personnel and personal property and equipment from the Garage, and surrender all keys to the Garage or any equipment or improvements therein to Owner upon the expiration or termination of this Agreement. Contractor hereby agrees that all the obligations of Contractor and all rights of Owner applicable during the term of this Agreement shall be equally applicable during any period following such Term during which Contractor continues to operate, use or have access to the Garage.

## 14.  Owner's Access

Owner shall at all times, have unrestricted access to the Garage to inspect the same, or to show the same to others, or to facilitate repairs to the Property (including the Garage), or to introduce, replace, repair, alter or make new or change existing connections from any fixtures, pipes, wires, ducts, conduits or other construction therein, or remove, without being held responsible therefor, signs, alterations, improvements or changes not expressly consented to by Owner. Nothing herein contained, however, shall be deemed or construed to impose upon Owner any obligation or liability whatsoever for care, supervision, repair, improvement, addition, change or alteration of the Garage, the Property or any part thereof other than as provided in this Agreement. Owner shall use reasonable efforts to minimize any interference by Owner with Contractor's business operations resulting from such access, and Owner shall provide Contractor with reasonable prior notice of Owner's exercise of its rights hereunder (except in the event of an emergency in which case no notice shall be required). However, Owner shall not be liable to Contractor in any way as a result of such exercise of Owner's rights, except to the extent of

Owner's gross negligence or willful misconduct and except that the Minimum Fees due hereunder shall be adjusted downward by an amount mutually agreed to by both Owner and Contractor.

## 15.    Taxes and Assessments

Owner will be responsible for the payment of all real property taxes and assessments with respect to the Property, including the Garage.

## 16.    No Possessory Rights

The parties acknowledge and agree that no provision of this Agreement shall in any way be construed as creating: (i) any joint venture between Owner and Contractor; (ii) any agency relationship between Owner and Contractor (the parties acknowledging that Contractor is an independent contractor and that Owner shall in no way be responsible for any acts or omissions of Contractor or its agents, employees or contractors with respect to the Garage, which acts or omissions shall be the sole responsibility of Contractor), (iii) any property rights of any kind for Contractor in the Garage; or (iv) any landlord-tenant relationship or leasehold interest of any kind or any possessory rights for Contractor with respect to the Garage (the parties acknowledging that this Agreement is expressly intended to be a personal services contract between Owner and Contractor).

## 17.    Notices

All notices required or permitted hereunder shall be hand delivered, delivered by a recognized overnight courier service, or mailed in any United States Post Office by certified or registered mail, postage prepaid, return receipt requested, addressed to Owner or Contractor respectively, at the following addresses or to such other addresses as the parties hereto may designate in writing from time to time:

| | |
|---|---|
| If to Owner: | Starwood Urban Retail II, LLC<br>c/o Starwood Urban Investments, LLC<br>1320 19TH Street, N.W., Suite 800<br>Washington, D.C. 20036<br>Attn:    Constance Collins Davis<br>        Chief Operating Officer & General Counsel |
| With copy to: | Cassidy & Pinkard, Inc.<br>Attn:  Tom Updike, CPM, RPA<br>2001 Pennsylvania Avenue, NW<br>Suite 800<br>Washington, DC 20006 |
| If to Contractor: | APCOA/Standard Parking, Inc.<br>Attn: Legal Department<br>900 North Michigan Avenue, Suite 1600<br>Chicago, IL 60611 |
| With copy to:<br>(by regular mail) | APCOA/Standard Parking, Inc.<br>Attn: Rick DePietro, Senior Vice President<br>Two Conley Place, Suite 300 |

Boston, MA 02116

| With copy to: | APCOA/Standard Parking, Inc. |
| (by regular mail) | Attn: Regional Manager |
| | 2341 Jefferson Davis Highway, Suite 110 |
| | Arlington, VA 22202 |

18.  **Miscellaneous Provisions**

      A.    The term **"Contractor"** shall include legal representatives and successors. All covenants herein made binding upon Contractor shall be construed to be equally applicable to and binding upon its agents, employees and others claiming the right to be in the Garage or in the

Property through or under Contractor. If more than one individual, firm, or corporation shall join as Contractor, singular context shall be construed to be plural wherever necessary and the covenants of Contractor shall be the joint and several obligations of each party signing as Contractor and when the parties signing as Contractor are partners, shall be the obligation of the firm and of the individual members thereof.

B.  No failure by either party to insist upon the strict performance of any term, covenant, agreement, provision, condition or limitation of this Agreement or to exercise any right or remedy consequent upon a breach thereof, and no acceptance by the Owner of full or partial Fees during the continuance of any such breach, shall constitute a waiver of any such breach or of any such term, covenant, agreement, provision, condition or limitation. No term, covenant, agreement, provision, condition or limitation of this Agreement to be kept, observed or performed by Owner or by Contractor, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Owner or by Contractor, as the case may be. No such waiver or breach of any covenant, condition or agreement herein contained shall operate as a waiver of the covenant, condition or agreement itself, or of any subsequent breach thereof.

C.  Notwithstanding anything to the contrary contained in this Agreement, Contractor shall look only to Owner's ownership in the Property for satisfaction of Contractor's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Owner in the event of any default by Owner hereunder, and no other property or assets of the partners or principals of Owner, disclosed or undisclosed, shall be subject to levy, execution or the enforcement procedure for the satisfaction of Contractor's remedies under or with respect to this Agreement, the relationship of Owner and Contractor hereunder or Contractor's use of or operation in the Garage. If any provision of this Agreement either expressed or implied obligates Owner not to unreasonably withhold its consent or approval, an action for declaratory judgment or specific performance will be Contractor's sole right and remedy in any dispute as to whether Owner has breached such obligation.

D.  OWNER AND CONTRACTOR EXPRESSLY AGREE THAT THERE ARE AND SHALL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER KIND ARISING OUT OF THIS AGREEMENT AND THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.

E.  Feminine or neuter pronouns shall be substituted for those of the masculine form and the plural shall be substituted for the singular, wherever the context shall require. It is also agreed that no specific words, phrases or clauses herein used shall be taken or construed to control, limit or cut down the scope or meaning of any general words, phrases or clauses used in connection therewith.

F.  This Agreement shall likewise be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and permitted assigns. This provision shall not be deemed to grant Contractor any right to assign its interest under this Agreement.

G.  It is understood and agreed by and between the parties hereto that this Agreement contains the final and entire agreement between said parties, and that they shall not be bound by any terms, statements, conditions or representations, oral or written, express or implied, not herein contained. Neither party hereto has made or relied upon any representations not set forth herein in entering into this Agreement. This Agreement may not be modified orally or in any manner other than by written agreement signed by the parties hereto.

H.  Time is of the essence with respect to the parties' performance of all of their respective obligations hereunder.

I.  This Agreement may be executed in several counterparts, but all counterparts shall constitute one and the same instrument.

J.  The submission of an unsigned copy of this Agreement to Contractor for Contractor's consideration does not constitute an offer to enter into a contract, nor an option to

operate the Garage. This Agreement shall become effective and binding only upon the execution and delivery of this Agreement by both Owner and Contractor.

K.    No determination by any Court, governmental body, arbitrator or otherwise that any provision of this Agreement or any amendment hereof is invalid or unenforceable in any instance shall effect the validity or enforceability of (a) any other provision thereof, or (b) such provision and any circumstance not controlled by such determination. Each such provision shall be valid and enforceable to the fullest extent allowed by, and shall be construed wherever possible as being consistent with, applicable law.

L.    Any provision of this Agreement which obligates the Owner or the Contractor to pay an amount or perform an obligation before the commencement of the Term or after the expiration of the Term shall be binding and enforceable notwithstanding that payment or performance is not within the Term, and the same shall survive the termination of this Agreement.

M.    The parties hereby covenant that each of them has the full right, power and authority to enter into this Agreement upon the terms and conditions herein set forth and shall provide the other party with any evidence reasonably required by such other party to so indicate said authority. If Contractor is a corporation or partnership, the individual signing this Agreement hereby confirms that he has the authority to bind said corporation or partnership by his/her signature. If Contractor signs as a corporation, each of the persons executing this Agreement on behalf of Contractor does hereby covenant and warrant that Contractor is a duly authorized and existing corporation, qualified to do business in the state in which the Garage is located and that the corporation has full right and authority to enter into this Agreement. If Contractor consists of more than one individual or entity, the liability of such parties shall be joint and several.

N.    This Agreement shall be construed and governed pursuant to the laws of the State of Maryland. Should any provision of this Agreement and/or its conditions be illegal or not enforceable under the laws of said state, it or they shall be considered severable, and the Agreement and its conditions shall remain in force and be binding upon the parties as though the said provision had never been included.

O.    If Owner or Contractor are prevented or delayed in the performance of any of their covenants or obligations hereunder by circumstances beyond their control (including, but not limited to governmental regulations or prohibitions) such delay or nonperformance will not constitute a default hereunder by Owner or Contractor. Notwithstanding the foregoing, the parties' obligations to make payments (or grant credits) hereunder (including, but not limited to Contractor's Fee payment obligations, which constitute an independent covenant) shall in no way be affected by the terms of this Paragraph O, unless Owner or Contractor are prohibited from meeting such payment or credit obligations pursuant to a governmental regulation, statute or other order by an appropriate governmental authority.

P.    The respective parties hereto certify that no person or company provided services as a broker, agent, finder or assisted in the negotiations of this Agreement. It is understood that each party agrees to indemnify the other for any claim asserted by any person or company purporting to act on its behalf in providing services as a broker, agent or finder in connection with this Agreement.

Q.    Contractor shall, without charge therefor, at any time and from time to time, within ten (10) days after request by Owner, execute, acknowledge and deliver to Owner a written estoppel certificate certifying to Owner, any mortgagee, assignee of a mortgagee, or any purchaser of the Property, that: (a) that Contractor is operating the Garage; (b) that this Agreement is unmodified and in full force and effect (or if there have been modifications, that the Agreement is in full force and effect as modified and setting forth such modification); (c) whether or not there are then existing any set-offs or defenses against the enforcement of any right or remedy of Owner, or any duty or obligation of Contractor hereunder (and, if so, specifying the same in detail); (d) the amount of the Minimum Fees and the dates through which such Minimum Fees, any Percentage Fees and any additional charges have been paid; (e) that Contractor has no knowledge of any then uncured defaults on the part of Owner under this Agreement (or if Contractor has knowledge of any such uncured defaults, specifying the same in detail); and (f) any such other matters as Owner may reasonably request. Any such statement

may be relied upon by any owner of the Property, any prospective purchaser of the Property, any holder or prospective holder of a Mortgage (as defined below) or any other person or entity. Contractor acknowledges that time is of the essence to the delivery of such statements and that Contractor's failure to deliver timely such statements may cause substantial damages resulting from, for example, delays in obtaining financing secured by the Property. Contractor shall be liable for all such damages. If any such statement is not delivered timely by Contractor, then all matters contained in such statement shall be deemed true and accurate and Contractor's failure irrevocably constitutes and appoints Owner as its attorney in fact to execute and deliver the statement to any third party.

R.     Contractor, at its sole cost and expense, will obtain and maintain in full force and effect throughout the Term of this Agreement, all necessary and required licenses, permits and/or authorizations from applicable governmental authorities having jurisdiction over the Garage to operate an off-street automobile parking area in the Garage.

S.     Owner and Contractor each agree to and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Agreement, the relationship of Owner and Contractor, Contractor's use of or operations in the Garage and/or any claim of injury or damage, and any statutory remedy.

T.     No sign, advertisement, lettering, canopy, decoration or notice shall be inscribed, painted, affixed or otherwise displayed on any part of the Garage without the prior written approval of Owner, which may be granted or withheld in Owner's sole and absolute discretion. If any such item that has not been approved by Owner is so displayed, then Owner shall have the right to remove such item at Contractor's expense or to require Contractor to do the same. All initial signage requests and plans shall be delivered to Owner not later than the thirtieth (30th) day after the date Contractor executes this Agreement, and all initial signage which has been approved by Owner shall be installed not later than the day Contractor opens for business at the Garage. All of Contractor's signs shall be: (a) installed after Contractor has obtained, at Contractor's sole cost and expense, all permits and licenses required therefor, and delivered copies thereof to Owner and prior to the date on which Contractor opens the Garage for business; (b) in conformance with all Property standard signage specifications; and (c) at Contractor's sole cost and expense, installed, maintained, repaired and replaced in a first class manner. Owner reserves the right to replace any Property standard sign supplied by Owner and to replace any exterior sign supplied by Contractor with a Property standard sign. Owner reserves the right to affix, install and display signs, advertisements and notices on any part of the exterior or interior of the Property.

Loc #03714

IN WITNESS WHEREOF, the parties hereto have caused their names to be hereto signed by their duly authorized officer on the date hereinbefore first written.

**OWNER:**

STARWOOD URBAN RETAIL, LLC

By:   Starwood Urban I, LLC, a Delaware limited liability company

     By:   Starwood Urban LLC,
            Sole Member

**WITNESS/ATTEST:**

     By:   Wennett/Urban Retail, L.L.C.,
            Operating Member

     By:

            Robert S. Wennett or Constance
            Collins Davis, Authorized Signatory

**WITNESS/ATTEST:**

Asst. Secretary

**CONTRACTOR:**

APCOA/Standard Parking, Inc.

By:
Name:  Steven A. Warshauer
Title:   Executive Vice President
Date:   5/2/01

coC:
#03714

Exhibit "A"

None.